O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED FABRICS INTERNATIONAL, INC., | Case No. CV13-00803-ODW(AJWx) |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [50] AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [72]** |
| v. | |
| G-III APPAREL GROUP, LTD. d.b.a. "WILSON'S LEATHER"; MCKLEIN COMPANY LLC; and DOES 1-10, | |
| Defendants. | |

## I.   INTRODUCTION

Before the Court are two Motions for Partial Summary Judgment filed by the parties in this copyright infringement action. Plaintiff United Fabrics International, Inc. ("UFI") seeks summary judgment on the issues of infringement, secondary infringement, and willfulness. (ECF No. 50.) Defendants G-III Apparel Group, Ltd. ("G-III) and McKlein Company LLC ("McKlein") seek summary judgment on the same issues as well as the availability of actual damages and profits as remedies. (ECF No. 72.)  The Court finds that there is no genuine issue of material fact regarding the infringement of UFI's copyright in this case.  However, the Court finds that there are triable issues as to whether the infringement was willful or innocent, and whether Defendants are liable for vicarious or contributory infringement.  Moreover,

the question of whether UFI can recover actual damages and profits turns on the nature of the infringement. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff UFI's Motion for Partial Summary Judgment, and **DENIES** Defendants' Motion for Partial Summary Judgment.[1]

## II. FACTUAL BACKGROUND

UFI filed the Complaint against Defendants G-III and McKlein (collectively "Defendants") on Febraury 5, 2013. (ECF No. 1.) The Complaint raises claims for Copyright Infringement and Vicarious and/or Contributory Copyright Infringement.

UFI creates and purchases exclusive rights to two-dimensional works of art, and files and receives copyright registrations for these works. (Simantob Decl. ¶ 2.)[2] UFI also creates original fabric prints and sells fabric bearing those prints to its customer base, which is composed mainly of companies that make and sell garments to retailers. (*Id.*) The copyright at issue in this case is a textile design UFI refers to as "AFFIRMATIVE," which was registered with the United States Copyright Office on July 29, 2009, and allocated Registration Number VAu 994-780 (hereinafter "Subject Design"). (*Id.* ¶ 6, Ex. 1.) UFI began sampling and selling the Subject Design in June 2009 and has since sold tens of thousands of yards of fabric bearing the Subject Design to numerous customers. (*Id.* ¶ 7, Ex. 2.)

G-III is a company consisting of multiple divisions, including AM Retail Group. (Minniti Decl. ¶ 1, Monico Decl. ¶ 1.) AM Retail Group is located in Brooklyn Park, Minnesota and operates retail stores under the name Wilson's Leather. (Minniti Decl. ¶¶ 1–5; Monico Decl. ¶¶ 1–5.) McKlein works with AM Retail Group to supply handbags and wallets to Wilson's Leather. (*Id.*; P. Saetia Decl. ¶¶ 3–14.)

---

[1] After carefully considered the papers filed with respect to these Motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] The majority of declarants have submitted identical declarations in support of and/or in opposition to both Motions for Summary Judgment. For example, while the docket in this case may indicate that multiple declarations from Al Minniti have been filed, upon closer review these declarations are really the same declaration dated August 31, 2013. Therefore, the Court will simply refer to these declarations by the declarant's last name, unless a distinction needs to be made.

1    The parties are in agreement that handbags and wallets bearing the Subject Design (the "Accused Products") were available for sale by G-III at Wilson's Leather retail stores. (Simantob Decl. ¶ 10, Ex. 6; ECF No. 60 ¶ 18.) UFI did not authorize use of the Subject Design on the Accused Products. (Simantob Decl. ¶ 11; ECF No. 60 ¶ 18.) Defendants claim that they had no knowledge that the Subject Design was copyrighted by UFI. (Minniti Decl. ¶¶ 3–8; Monico Decl. ¶¶ 3–8.) However, UFI asserts that G-III was aware of the copyright because G-III sampled the Subject Design prior to UFI discovering the Accused Products for sale at Wilson's Leather. (UFI Mot. 8:7–13, 17:13–23.)

To support its theory, UFI points out that at least one division of G-III has been a customer of UFI since as early as 2007. (Simantob Decl. ¶ 9.) UFI claims that in July 2009, the Jessica Howard division of G-III ordered a sample of the Subject Design. (*Id.* at Ex. 5.) An invoice dated July 14, 2010 also reflects that four yards of suede fabric bearing the Subject Design were sent to someone named Mitchell at the Jessica Howard division of G-III. (Simantob Decl. ¶ 9, Ex. 5.) Another order was apparently placed on August 8, 2010 by someone named Laura for four yards of the Subject Design in the same color scheme on sateen fabric. (*Id.*)

Defendants rebut UFI's evidence of sampling the Subject Design by asserting that the individuals at G-III responsible for purchasing the Accused Products had no contact with the Jessica Howard division. (Minniti Decl. ¶ 5, Monico Decl. ¶ 5.) The Jessica Howard division is located in New York City, while AM Retail Group, the division responsible for Wilson's Leather, is based in Minnesota. (Minniti Decl. ¶ 5.) G-III asserts that the design for the Accused Products was selected by AM Retail Group employees after being provided with options from McKlein. (*Id.* ¶¶ 2–3; Monico Decl. ¶¶ 2–3.) McKlein in turn received the fabric design options from Cheng Shun Textiles, a Chinese company. (P. Saetia Decl. ¶¶ 5, 14.) According to Defendants, the Accused Products were purchased on a good faith belief that the

/ / /

fabric design was not subject to any copyright restrictions. (*Id.* ¶ 18; Minniti Decl. ¶ 6; Monico Decl. ¶ 6.)

After discovering the Accused Products for sale at Wilson's Leather stores, UFI sent G-III a cease and desist letter on December 5, 2012. (Burroughs Decl. ¶¶ 3, Ex. 9.) After an investigation, G-III indicates that it pulled the Accused Products from the sales floor in February 2013, but admits that some sales of the Accused Products occurred as late as March 2013. (Brooks Decl. ¶ 6, Ex. 6.)

The present Motions for Partial Summary Judgment were filed on November 4, 2013 and November 18, 2013. Since the Motions concern the same issues of fact and law, the Court determined that the Motions should be considered simultaneously. Several exhibits and portions of declarations submitted in support of and in opposition to the Motions have been filed under seal because they contain certain confidential information, such as proprietary customer lists and pricing.

## III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if

the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV. DISCUSSION

UFI moves for summary judgment on copyright infringement and willfulness, as well as on vicarious and contributory infringement. Defendants move for summary judgment on the issues of willful and innocent infringement, as well as on vicarious and contributory infringement. Defendants also seek summary judgment regarding the availability of actual damages and profits. For the reasons discussed below, the Court finds that summary judgment is only appropriate as to copyright infringement.[3]

**A.      Copyright Infringement**

To succeed on a copyright infringement claim, a plaintiff must prove ownership of a copyright and infringement—that the defendant copied protected elements of the plaintiff's works. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). The Court finds that UFI has established that both G-III and McKlein have infringed on UFI's copyright of the Subject Design.

**1.      Ownership of the Copyright**

UFI has met its burden to establish ownership of the copyright to the Subject Design. UFI has submitted a copyright registration certificate for the Subject Design. (Simantob Decl. ¶ 6, Ex. 1.) The certificate indicates that UFI registered the textile design "AFFIRMATIVE" with United States Copyright Office on July 29, 2009. (*Id.*) The design was allocated Registration Number VAu- 994-780. (*Id.*) UFI also began sampling and selling the Subject Design in June 2009. (*Id.* ¶ 7, Ex. 2.) Under 17 U.S.C. § 410(c), a "certificate of registration made before or within five years after

---

[3] The Court has reviewed the evidentiary objections lodged by the parties. To the extent that the Court relies upon evidence to which one or more parties have objected, the Court **OVERRULES** those objections. The evidence upon which the Court relies is relevant, within the declarants' personal knowledge, and based on nonhearsay under the Federal Rules of Evidence.

first publication of the work shall constitute prima facie evidence of the validity of copyright and the facts stated in the certificate." A defendant then bears the burden of rebutting the presumption of validity. *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (9th Cir. 1999). Here, while Defendants do not concede the Subject Design's originality, they do concede that they have been unable to unearth evidence to rebut the presumption of the copyright's validity. (Defs' Opp'n 6:25–7:6.) Under the Copyright Act, absent evidence to the contrary, UFI's registration certificate is sufficient to establish ownership at the summary judgment stage.

### 2. Infringement of the Copyright

Infringement of a valid copyright can be established in one of two ways. A plaintiff must prove that the defendant had "access" to the copyrighted material and that the accused product is substantially similar, applying both extrinsic and intrinsic tests. *Three Boys Music*, 212 F.3d at 481; *see also Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). In the alternative, particularly where access is difficult to prove, infringement can be established by showing that the accused design is so "strikingly similar" to the copyrighted work that no explanation other than copying is plausible. *Three Boys Music*, 212 F.3d at 481; *see also Walker v. University Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979) ("[P]roof of actual copying . . . is often attained . . . where the similarity between the two works is such that no explanation other than copying is reasonably plausible.").

In this case, UFI argues that it has established an "unmistakable chain of events" linking G-III and McKlein to the Subject Design. (UFI Mot. 8:7–13.) Specifically, UFI points to evidence that G-III has been a customer of UFI since at least 2007 and that G-III ordered samples of the Subject Design on as many as three occasions. (Simantob Decl. ¶ 9, Ex. 5.) UFI then provides the Court with a side-by-side comparison of the Subject Design with the design on the Accused Products. (UFI Mot. 12–13; Simantob Decl. ¶¶ 6, 8, 10, Exs. 1, 4, 6.)

/ / /

| Subject Design | Accused Products |
|---|---|
|  |  |
| **Subject Design Detail** | **Accused Product Design Detail** |
|  |  |

1    In response to UFI's arguments regarding access and substantial similarity, Defendants concede that the Subject Design and the design on the Accused Products are "strikingly similar." (Defs' Opp'n 7:7–15, 9:9–16; ECF No. 60 ¶ 18.) Defendants do not concede the issue of access, instead asking the Court to find that the infringement is merely innocent, and limit UFI to statutory damages. (Defs' Opp'n 2:3–7, 9:26–28.)

The Court finds that because the parties do not dispute that the Subject Design and the design on the Accused Products are at least "strikingly similar," summary judgment should be granted on the issue of infringement.

## B.  Willful and Innocent Infringement

Both UFI and Defendants move for summary judgment on the issue of willfulness. UFI contends that undisputed evidence proves that Defendants' willfully infringed on the Subject Design copyright. UFI points to the evidence that G-III has been a customer of UFI since 2007, and samples of the Subject Design were ordered by G-III on at least three occasions in 2009 and 2010. (Simantob Decl. ¶ 9, Ex. 5.) On the other hand, Defendants argue that there is no evidence of willfulness, and thus the Court should grant summary judgment in Defendants' favor on the issue. (*E.g.* Defs' Opp'n 10:24–25.) Defendants contend that UFI's evidence of sampling the Subject Design is irrelevant because the sampling was done by a different division of G-III that has no contact with AM Retail Group. (*Id.*) Instead, Defendants move for summary judgment on innocent infringement, arguing that both G-III and McKlein purchased the Accused Products from Cheng Shun Textiles in China on a good-faith reasonable belief that the products were free from any claim of copyright infringement. (Defs' Mot. 8–12.)

The nature of Defendants' infringement on UFI's copyright—whether it was willful or innocent—is essentially a question of damages. A finding of willfulness on the part of Defendants allows UFI, within the Court's discretion, to obtain more in statutory damages. 17 U.S.C. § 504(c)(2). A finding of innocent infringement would

1 allow the Court, in its discretion, to limit the statutory damages available. *Id.* While
2 the Copyright Act does not define the term "willful," the Ninth Circuit has held that
3 the term means "with knowledge that the defendant's conduct constitutes copyright
4 infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 n. 3 (9th
5 Cir. 1990); *see also Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284,
6 293 (9th Cir. 1997) *rev'd on other grounds sub nom. Feltner v. Columbia Pictures
7 Television*, 523 U.S. 340 (1998); *cf. Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957–58
8 (9th Cir. 2001). In contrast, innocent infringement occurs where the infringer was
9 "not aware and had no reason to believe that his or her acts constituted an
10 infringement of copyright." 17 U.S.C. § 504(c)(2).

11 The Court finds that genuine issues of material fact remain as to the nature of
12 Defendants' infringement in this case. UFI's President Shar Simantob states that
13 G-III has been a customer of UFI since as early as 2007. (Simantob Decl. ¶ 9.) In
14 addition, UFI has supplied invoices indicating that the Jessica Howard division of
15 G-III ordered a sample of the Subject Design in 2009, and four yards of the Subject
16 Design on different fabrics on July 14, 2010 and August 8, 2010. (*Id.* at Ex. 5.)
17 Defendants counter this evidence with declarations from employees at G-III's AM
18 Retail Group. AM Retail Group's Director of Product Development Al Minniti and
19 Buyer Elizabeth Monico state that the Jessica Howard division of G-III is located, to
20 the best of their knowledge, in New York City, far away from AM Retail Group's
21 location in Minnesota. (Minniti Decl. ¶ 5; Monico Decl. ¶ 5.) In addition, both
22 Minniti and Monico, who worked with McKlein to select the fabric design for the
23 Accused Products, state that they never received samples of the Subject Design from
24 anyone at the Jessica Howard division. (Minniti Decl. ¶¶ 3–6; Monico Decl. ¶¶ 3–6.)
25 / / /
26 / / /
27 / / /
28 / / /

1 This conflicting evidence presents a genuine dispute as to G-III's knowledge that the
2 Subject Design was copyrighted by UFI.[4]

3 A reasonable jury could infer, although tenuous, that the individuals at G-III
4 involved in purchasing the Accused Products had knowledge of UFI's copyright,
5 based on the samples and orders placed at the Jessica Howard division of G-III.
6 While Defendants have presented declarations from two G-III employees to the
7 contrary, there is little evidence presented regarding the corporate structure of G-III
8 beyond rather conclusory statements from Minniti and Monico. The weight to be
9 given to the evidence presented by UFI and Defendants should be left to a jury.

10 UFI also argues that Defendants willfully infringed on the Subject Design
11 copyright because they continued to sell the Accused Products for three months after
12 UFI sent a cease and desist letter in December 2012. (UFI Mot. 18:20–20:4.)
13 However, the Court cannot make such a finding as a matter of law. "To hold that
14 willfulness must be inferred whenever an alleged infringer uses an intellectual
15 property in the face of disputed title would turn every copyright claim into willful
16 infringement and would improperly discourage many legitimate, good faith
17 transactions." *Danjaq*, 263 F.3d at 959. Instead, the applicable standard after receipt
18 of a cease and desist letter is whether Defendants' had a good faith, reasonable belief
19 that their conduct was innocent. *Peer Int'l Corp.*, 909 F.2d at 1335–36. In this case, a
20 jury could find that three months was a reasonable amount of time for Defendants to
21 investigate the infringement claims contained in UFI's cease and desist letter, and to
22 pull the Accused Products from the shelves. The jury could also find that it was
23 unreasonable. It is a question of fact that cannot be decided on summary judgment.
24 / / /

25

---

26 [4] Both UFI and Defendants spend time arguing the applicability of the "corporate receipt doctrine"
27 to this case. But the Court finds this doctrine unpersuasive in deciding the issue at hand. The Court
has found very little case law to support application of this doctrine in favor of either UFI or
28 Defendants. Moreover, the courts that have utilized the corporate receipt doctrine at summary
judgment take diametrically opposed positions on its application. 4 Nimmer on Copyright § 13.02.

Since the Court finds that genuine issues of material fact remain with respect to whether Defendants' infringement of the Subject Design was willful, it necessarily follows that the Court cannot grant summary judgment on innocent infringement.

**D. Vicarious Infringement**

To prove vicarious copyright infringement, a plaintiff must show that "the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). UFI argues that the Court should grant summary judgment in its favor as to vicarious infringement because Defendants "materially contributed in a single supply chain" from the manufacture of the fabric and goods to the sale of the completed product. (UFI Mot. 16:2–4.) UFI also argues that Defendants profited from the sales on each level of the supply chain. (*Id.* at 16:4–5.) But Defendants contend that the Court should grant summary judgment in their favor on vicarious infringement because there is an absence of facts to support the claim. (Defs' Mot. 6:8–16.)

The Court finds that the evidence presents triable issues regarding vicarious infringement. The facts indicate that G-III worked with McKlein to develop the Accused Products. G-III supplied McKlein with handbag styles as well as wallet styles. (Monico Decl. ¶ 2; P. Saetia Decl. ¶¶ 4–5, 13.) McKlein provided G-III with samples of materials that could be used on the handbags and wallets. (P. Saetia Decl. ¶¶ 7–8.) Among the materials sampled was a nylon fabric bearing the Subject Design. (*Id.* ¶¶ 7–8, 17.) Multiple communications back and forth between G-III and McKlein occurred regarding the design and material to be used on the Accused Products, with G-III requesting that changes be made. (*Id.* ¶¶ 7–14.) G-III ultimately selected the fabric with the Subject Design and McKlein placed the order with its factory. (*Id.* ¶ 14; Monico Decl. ¶¶ 3, 5.) The factory then purchased the fabric with the Subject Design from Cheng Shun Textiles to produce the Accused Products. (P. Saetia Decl. ¶¶ 15–16.) A jury could find from these facts that both G-III and McKlein had a

supervisory role over the infringing conduct. They both played a role in selecting the Subject Design for the Accused Products and the factory simply produced what it was told to produce. Moreover, as discussed above, there is some evidence that G-III may have known the Subject Design was copyrighted, which a jury could find gives greater weight to the role G-III (and even McKlein) had in selecting and controlling the use of the Subject Design. The back and forth communications between G-III and McKlein when selecting the Subject Design for the Accused Products may also lead a reasonable jury to find the requisite level of control over the infringing conduct. Overall, the supervisory roles of G-III and McKlein remain as questions for the jury.

There are also questions of fact that remain with respect the second element required to establish vicarious infringement. "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Defendants argue that there is no evidence of a causal relationship between the infringement and the financial benefit that Defendants obtained from the purchase and sale of the Accused Products. Employees of both G-III and McKlein state that the price paid for the Accused Products was commensurate with the market price for similar goods and that they received no "discounts" when purchasing the fabric bearing the Subject Design. (Minniti Decl. ¶ 7; Monico Decl. ¶ 7; P. Saetia Decl. ¶ 16; T. Saetia Decl. ¶ 6.) While these statements from employees are helpful to Defendants' case, the weight to be given this evidence may once again turn on the question of knowledge. As already discussed above, there is evidence to suggest that Defendants may have known that the fabric bearing the Subject Design was copyrighted. If that is the case, the mostly conclusory declarations from Defendants—without additional information, such as actual evidence of the market price for similar goods—may not convince a jury that the causal link between the infringing activity and the financial benefit is absent.

Since there remains a genuine issue of material fact regarding the Defendants' knowledge that the Subject Design was copyrighted, which bears upon the weight to be given to employee testimony, the Court finds that summary judgment as to vicarious infringement is improper.

### E. Contributory Infringement

All parties also seek summary judgment as to contributory infringement. "A defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10*, 494 F.3d at 795. As already discussed at length, a genuine issue of material fact exists as to whether G-III and McKlein had knowledge of the infringing activity. UFI has presented some evidence that at least G-III may have known that the Subject Design was copyrighted because of the orders sent to the Jessica Howard division of G-III. If Defendants knew that selecting the Subject Design for the Accused Products constituted infringement, then a jury could also find that Defendants at least materially contributed to the infringing conduct. Accordingly, the Court cannot grant summary judgment as to contributory infringement.

### F. Actual Damages and Profits

Lastly, Defendants seek summary judgment on the recovery of actual damages and profits. Under the Copyright Act, a plaintiff may recover statutory damages *or* actual damages and profits for infringement. 17 U.S.C. § 504(a). Specifically, "the copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and not taken into account in computing the actual damages." § 504(b). Defendants raise a novel argument as to why the Court should limit the available damages to UFI, which centers on both G-III and McKlein being considered "downstream infringers." (Defs' Mot. 12–25.) The thrust of the argument is that UFI cannot establish a causal link between Defendants' profits from the Accused Products and the infringing activity, which originated with Cheng Shun Textiles. (*Id.*) The

problem with Defendants' argument is that it once again hinges on Defendants' knowledge. In order to entertain Defendants' arguments about merely being "downstream infringers," the Court must first find that Defendants' infringement was innocent. Since the Court has made no such finding, the Court cannot grant summary judgment on the issue of actual damages.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff UFI's Motion for Summary Judgment. (ECF No. 50.) Summary judgment is granted as to copyright infringement alone, and denied as to all remaining claims and issues in UFI's Motion. The Court **DENIES** Defendants' Motion for Summary Judgment. (ECF No. 72.)

**IT IS SO ORDERED.**

December 27, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**